UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

James W. Herne and
Michelle A. Herne,
     Plaintiffs

     v.                                    Civil No. 04-cv-202-SM
                                           Opinion No. 2005 DNH 144
Cooper Industries, Inc. and
Colombus McKinnon Corporation,
     Defendants

**O R D E R**

In March of 2003, James Herne constructed a backyard swing using plastic-coated steel cable manufactured by Cooper Industries and cable clips manufactured and/or distributed by Colombus McKinnon. Later that year, the swing collapsed when, according to the complaint, the cables and/or clips failed, causing Herne to fall to the ground. As a result of that fall, Herne says he sustained severe and permanent injuries. Subsequently, he and his wife brought this twelve count complaint against defendants.

Pending before the court is McKinnon Corporation's motion for summary judgment as to two counts in plaintiffs' third

amended complaint. Plaintiffs object. For the reasons set forth below, McKinnon's motion is granted in part and denied in part.

### Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

### Background

In the fall of 2002, Herne purchased a length of 3/16 inch plastic-coated wire cable from a local Home Depot, with the

intent to construct a backyard swing the following spring.  A few months later, he purchased several wire cable clips from a local hardware store.  In his deposition, Herne testified that when he purchased the cable clips, he did not speak to any salespeople about his intended use for those clips, nor did he seek any advice as to whether it was appropriate to use those clips as part of a swing, nor did he seek advice on how to install those clips.  Herne also testified that the manufacturer and/or distributor of the clips – McKinnon – did not make any representations about the clips, their intended uses, or the proper means by which to install them; Herne found the clips in an unmarked cardboard display box on a shelf in the hardware store, unaccompanied by any promotional or instructional materials.

   The clips themselves did not bear any markings or representations as to the uses to which they might properly be put or the proper means by which to install them.  Each clip did, however, have a tag affixed to it, bearing the UPC code and the following warning:

>       <u>DO NOT USE FOR CRITICAL OR LIFTING APPLICATIONS</u>.  DO
>       NOT EXCEED THE WORKING LOAD LIMIT FOR CABLE OR
>       COMPONENTS – ALWAYS MATCH CABLE SIZE TO CLIP SIZE.

Exhibit E to plaintiffs' memorandum, Columbus McKinnon bar code label (emphasis in original).

   After purchasing the cable clips, Herne constructed the swing and attached it to a tree.  On June 28, 2003, he was injured when the wire cables and/or cable clips failed, the swing collapsed, and he fell to the ground.  In December of 2003, plaintiffs brought suit against defendant Cooper Industries, Inc., in the New Hampshire Superior Court, apparently believing that Cooper Industries manufactured both the wire cable and the cable clips.  Subsequently, however, plaintiffs learned that McKinnon manufactured and/or distributed the clips.  Accordingly, in April of 2004, they filed an amended complaint, naming McKinnon as a defendant.  McKinnon then removed the proceeding from state court, invoking this court's diversity jurisdiction.

   The thrust of plaintiffs' claims against McKinnon is that McKinnon failed to warn purchasers that, when using the cable clips to secure plastic coated cable, the user should strip away

that portion of the plastic coating where the clip is to be attached.  Absent such stripping, say plaintiffs, the clip was far more likely to fail – as it (allegedly) did in this case.  And, say plaintiffs, McKinnon has, for many years, been aware of this potentially dangerous use of its cable clips and yet has failed to properly warn consumers.

## Discussion

As noted above, McKinnon asserts that it is entitled to judgment as a matter of law as to two counts in plaintiffs' complaint: (1) count six, in which plaintiffs allege that McKinnon's failure to warn purchasers about potential dangers associated with certain uses of the cable clips constitutes an unfair and deceptive trade practice, in violation of New Hampshire's Consumer Protection Act, N.H. Rev. Stan. Ann. ("RSA") ch. 358-A; and (2) count ten, in which plaintiffs allege that McKinnon breached both express and implied warranties concerning the cable clips' fitness for the uses to which consumers would ordinarily put them.

A.   <u>Count Six – New Hampshire's Consumer Protection Act</u>.

The New Hampshire Consumer Protection Act makes it unlawful for an entity to use "any unfair method of competition or any unfair or deceptive act or practice in the conduct of trade or commerce in this state."  RSA 358-A:2.  The Act provides a non-exhaustive list of fifteen prohibited unfair and/or deceptive practices.  RSA 358-A:2, I – XIV.[1]

To guide courts in interpreting the scope of the statute, the New Hampshire Legislature specifically stated:

> It is the intent of the legislature that in any action or prosecution under this chapter, the court may be guided by the interpretation and construction given Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), by the Federal Trade Commission and the federal courts.

RSA 358-A:13.  New Hampshire courts are also guided by the interpretation given to similar sections of the Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93-A.  <u>See, e.g.</u>, <u>Remsburg v. Docusearch, Inc.</u>, 149 N.H. 148, 160 (2003) ("We find

---

[1] Although the numbering employed in the statute suggests that only 14 unfair and/or deceptive acts are identified (i.e., I through XIV), it contains a section labeled "X" as well as one labeled "X-a," thus bringing the total to fifteen.

support for this conclusion in the Massachusetts Consumer Protection Act, which is similar in many respects to the New Hampshire statute.") (citing Milford Lumber Co. v. RCB Realty, 147 N.H. 15, 18 (2001); Chase v. Dorais, 122 N.H. 600, 602 (1982) ("Although this case is one of first impression in New Hampshire, there is a well developed body of law defining trade and commerce in Massachusetts where the consumer protection statute, Massachusetts General Laws Ann., ch. 93A § 1, contains exactly the same definition of trade and commerce as is contained in RSA ch. 358-A.").

   In support of its motion for summary judgment, McKinnon advances to arguments.  First, it points out that the CPA does not expressly state that a "failure to warn" amounts to an unfair or deceptive practice.  While that statement is true, it is not dispositive of plaintiffs' claim – the CPA plainly prohibits more than the prohibited practices identified in the Act's non-exhaustive list.  See, e.g., Roberts v. General Motors Corp., 138 N.H. 532, 538 (1994) (noting that while the reach of the Act is not unlimited, the "Consumer Protection Act is a comprehensive

statute whose language indicates that it should be given broad sweep.") (citation omitted).

Next, McKinnon asserts that the type of conduct at issue here – a failure to warn purchasers of potential hazards associated with using the wire clips to fasten plastic coated wire cable – is not encompassed by even a liberal reading of the statute.  Instead, says McKinnon, the CPA proscribes only affirmative misrepresentations (as opposed to passive omissions) that "attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce." Defendant's memorandum at 7 (quoting State v. Moran, 151 N.H. 450, 452 (2004)).  The court disagrees.

Both Section 5 of the Federal Trade Commission Act as well as the Massachusetts Consumer Protection Act have been interpreted to cover situations involving the failure to warn consumers of a potentially dangerous use to which they might put a product.  See, e.g., In the Matter of International Harvester Co., 104 F.T.C. 949, 1984 WL 565290 (Dec. 21 1984) ("Commission precedent is quite clear on the duty to disclose such a hidden

8

hazard.  The Commission has held that the failure to make such disclosure is both deceptive and unfair.  Even where no explicit safety claim has been made, as in this case, the Commission has found that the failure to disclose such a hidden, or unknown hazard is a deceptive practice."); In the matter of Firestone Tire & Rubber Co., 81 F.T.C. 398, 1972 WL 127476 (Sept. 22, 1972) ("[T]he Commission has frequently decided that the omission of product safety information is an unfair and deceptive practice.  For instance, where no safety claim has been made about a product, but the product itself is inherently dangerous, the Commission has required parties to affirmatively state that such dangers exist.  In these cases the Commission has determined that where the danger is not readily observable, the law requires affirmative disclosures of the danger to focus the attention of consumers on this fact.  Otherwise, the Commission has found, consumers assume that products put into commerce are safe under normal use.") (citations omitted).  See also American Shooting Sports Council v. Attorney General, 429 Mass. 871, 877 (1999) ("If, during ordinary use in keeping with directions, the product performs in a deviantly unsafe or unexpected way, the product's

sale has occurred in circumstances which make the sale deceptive or unfair [under the Massachusetts Consumer Protection Act].").

In reliance upon such precedent, this court (Devine, J.) has concluded that the failure to warn of a defective or dangerous condition can, under appropriate circumstances, constitute an unfair or deceptive trade practice under New Hampshire's Consumer Protection Act.  McClary v. Erie Engine & Manu. Co., 1994 WL 803088 (D.N.H. Nov. 23, 1994).  McKinnon has not pointed to any contrary authority, either binding or persuasive, which stands for the proposition that a failure to warn cannot, as a matter of law, constitute an unfair or deceptive practice under that statute.  And, because a properly instructed jury might reasonably conclude that McKinnon failed to provide adequate warnings with the cable clips, it is conceivable that the jury might also conclude that McKinnon violated the Consumer Protection Act.  Accordingly, McKinnon has failed to demonstrate that it is entitled to judgment as a matter of law as to count six of plaintiffs' complaint.

B.   Count Ten – New Hampshire's Uniform Commercial Code.

While plaintiffs' complaint advances a claim against McKinnon for breach of express warranties, their memorandum of law does not address the issue – understandably so, given the undisputed fact that neither McKinnon nor any employees of the hardware store made any express representations or warranties to Herne about the cable clips at issue.  Accordingly, the court deems that claim to have been forfeited.

As to plaintiffs' claim that McKinnon breached an implied warranty of fitness for a particular purpose, McKinnon asserts, among other things, that plaintiffs failed to provide it with timely notice of their breach of warranty claims, as is required by the Uniform Commercial Code.  See RSA 382-A:2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.").  In response, plaintiffs say that they provided McKinnon with the requisite notice when they served it with their first amended complaint (which, for the first time, asserted various claims against McKinnon).  In other words, plaintiffs assert that the complaint they filed against McKinnon

served two purposes: first, it initiated suit against McKinnon; and, second, it served to satisfy New Hampshire's statutory notice requirement.

In support of their position, plaintiffs point out that the official comments to section 2-607 of New Hampshire's Uniform Commercial Code specifically state that consumers should be held to less exacting standards than commercial entities when measuring the timeliness of notice.

> The time of notification is to be determined by applying commercial standards to a merchant buyer. "A reasonable time" for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy. . . . The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

RSA 382-A:2-607, cmt. 4.  To be sure, neither section 2-607 nor comment 4 expressly prohibit the possibility that notice can be provided by a civil complaint.  And, in support of their

position, plaintiffs point to cases from other jurisdictions that seem to permit such notice.[2]

What plaintiffs have failed to do, however, is identify any New Hampshire authority for the proposition that the statutory notice requirement can be met simply by filing a civil complaint. McKinnon, on the other hand, has identified several New Hampshire Superior Court orders in which the court dismissed the plaintiffs' warranty claims for having failed to give the defendants timely notice of the alleged breach. At least implicitly, then, those opinions stand for the proposition that providing notice of an alleged breach simply by filing a civil complaint does <u>not</u> comply with the requirements of the statute. <u>See generally</u> Appendix to defendant's memorandum, collecting cases.

---

[2] Some of these foreign jurisdictions have Uniform Commercial Code provisions that differ from those adopted by New Hampshire. Accordingly, precedent from those jurisdictions is not particularly compelling or persuasive. For example, Section 2-318 of the Massachusetts UCC provides that, "[f]ailure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby." Mass. Gen. L. 106 § 2-318. The analogous section of New Hampshire's UCC contains no such "prejudice" provision. Implicitly, then, a defendant need not demonstrate that it was prejudiced by the lack of timely notice; it need only show that it did not receive such notice.

This court has also implicitly held that the filing of a lawsuit does not constitute "notice," as contemplated by New Hampshire's Uniform Commercial Code.  So, for example, in Cheshire Medical Center v. W.R. Grace & Co., 764 F. Supp. 213, 218 (D.N.H. 1991) (Devine, J.), the court granted defendant's motion for summary judgment as to plaintiff's breach of warranty claim when it concluded that "plaintiff never gave notice of its breach of warranty claim prior to filing suit." (emphasis supplied) (vacated in part by 767 F. Supp. 396, when plaintiff subsequently produced evidence that it had, in fact, given defendant notice of its breach of warranty claim, prior to filing suit).  See also Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F. Supp. 126, 132 (D.N.H. 1984) (Loughlin, J.) (granting defendant's motion to dismiss plaintiff's breach of warranty claims because "plaintiff never gave notice of its breach of warranty claims prior to filing suit.") (emphasis supplied); Dudley v. Business Express, Inc., 882 F. Supp. 199, 211 (D.N.H. 1994) (Devine, J.) ("The warranties of merchantability and particular purpose are subject to the notice provisions of the Uniform Commercial Code. This conclusion has become such a truism in New Hampshire law that neither party disputes the fact that notice is a

<u>prerequisite to maintaining a warranty action under the UCC</u>.") (emphasis supplied) (citation omitted).

Although the New Hampshire Supreme Court has yet to address the issue, this court is persuaded that it would likely conclude that the notice requirement of RSA 382-A:2-607(3)(a) imposes on plaintiffs the obligation to give defendants notice of potential breach of warranty claims <u>prior</u> to filing suit. If that notice requirement is to have any meaning at all, a civil complaint cannot serve the dual purpose of providing the defendant(s) with notice of potential warranty claims <u>and</u> actually initiate legal action based on those warranty claims. As the Court of Appeals for the First Circuit has observed, the reasons for requiring plaintiffs to provide prompt notice of potential warranty claims:

> is that warranty liability combines features that place potential defendants at serious risk: strict liability, lack of privity, and a statute of limitations that may run not from the sale but from the injury. As a counterweight, the requirement of prompt notice allows the defendant to gather evidence in [a] timely fashion; without such notice, a defendant could easily be surprised by a lawsuit many years after selling its products.

15

Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 449 (1st Cir. 1997) (citation omitted).  To be meaningful (and useful), then, the notice required by RSA 382-A:2-607(3)(a) must be given in a reasonably prompt manner, prior to filing suit; that notice requirement is not met when a defendant first learns of a plaintiff's breach of warranty claim in a civil complaint.

Here, plaintiffs failed to comply with the statutory notice requirement; they did not give McKinnon notice of their warranty claims prior to filing suit and "within a reasonable time after [they] discover[ed]" them.  RSA 382-A:2-607(3)(a).  Accordingly, McKinnon is entitled to judgment as a matter of law as to plaintiffs' warranty claims.

## Conclusion

For the foregoing reasons, McKinnon's motion for summary judgment (document no. 25) is granted in part and denied in part. As to count six of plaintiff's complaint (violation of the New Hampshire Consumer Protection Act), McKinnon's motion is denied. That motion is, however, granted to the extent McKinnon seeks

judgment as a matter of law with regard to count ten of

plaintiff's complaint (breach of express and implied warranties).

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 19, 2005

cc:  John J. Cronin, III, Esq.
     Gary M. Burt, Esq.
     Marc R. Scheer, Esq.